UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION–FLINT

In re:

DOUGLAS G. FREDERICK,   Case No. 11-31435
                        Chapter 13

       Debtor(s).   Honorable Daniel S. Opperman
_____/

OPINION REGARDING CLAIM OF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION AND DEBTOR'S ELIGIBILITY PURSUANT TO 11 U.S.C. § 109(e)

The Debtor, Douglas G. Frederick, seeks protection under Chapter 13 of the United States Bankruptcy Code. A creditor, the United States Securities and Exchange Commission ("SEC"), disputes the Debtor's eligibility to be a Chapter 13 Debtor because the amount owed to it is $956,448.99, consisting of $463,491.13 for disgorgement, prejudgment interest of $29,466.73, and a civil penalty of $463,491.13. The Court concludes that the Debtor is not eligible to be a Chapter 13 Debtor for the reasons stated in this Opinion.

Facts

The Debtor, through his trading firm, Tuco Trading, LLC ("Tuco") was in the securities business and maintained a number of accounts for investment purposes. The SEC, the investigative and enforcement agency for the Debtor's and Tuco's business, initiated an investigation and subsequently initiated an enforcement proceeding for securities law violations against the Debtor and Tuco.

On March 17, 2008, the District Court for the Southern District of California entered a Consent Judgment against the Debtor ("Consent Judgment"). The Consent Judgment was entered

1

after a receiver had been appointed to investigate the total amount of debt and had reported back to the District Court. The receiver devoted significant time and expense to arrive at a disgorgement amount of $463,491.13. His first report was dated June 2, 2008, and adopted findings of William H. Ling, CPA, that the Debtor should disgorge $463,491.13. The Debtor did not object to this finding and the District Court approved the report on July 17, 2008. The SEC and the Debtor devoted even more time to examine whether the Debtor could pay all or some of this amount, as well as whether the Debtor would be eligible for a full or partial waiver of the disgorgement amount. As early as June 2, 2008, the receiver's report concluded that the Debtor was responsible for $463,491.13 and that amount has not varied since.

Before the SEC could move for entry of a final judgment on the receiver's recommendation incorporating the $463,491.13 disgorgement amount against the Debtor individually, the Debtor filed this bankruptcy on March 23, 2011. On Debtor's Schedule F, he listed a debt owing to the SEC in an unknown amount as unliquidated. The District Court thereafter, on July 25, 2011, upon application by the SEC, entered a Final Judgment against Debtor in the amount of $463,491.13 for disgorgement, together with prejudgment interest of $29,466.73, and a civil penalty in the amount of $463,491.13, and required payment of said total amount of $956,448.99 within fourteen days of July 25, 2011.

The SEC objects to confirmation of Debtor's Chapter 13 plan. The SEC asserts that it has a non-contingent, liquidated debt in the amount of $492,077.88, which claim Debtor has not objected to, but which places Debtor over the Chapter 13 eligibility threshold limit of $360,475 for general unsecured debt pursuant to 11 U.S.C. § 109(e). The SEC also asserts that Debtor filed this case in bad faith, which is a further reason for denial of confirmation.

2

The Debtor disputes that the SEC's claim is liquidated and that he was well below the $360,475 threshold amount. Debtor filed an affidavit in support of his position that describes his belief from his dealings and experience with the SEC that if he agreed to the Consent Judgment, a monetary remedy would not be pursued by the SEC. He also bases his position on his belief that "once the receiver took control of Tuco there were sufficient funds to pay all members back their money on account with Tuco." Further, Debtor's affidavit states that he was aware in February 2011, prior to his bankruptcy filing that the SEC would be seeking disgorgement, but "was confident that [he] would never be ordered to pay such an exorbitant amount of money." Debtor asserts that he believed his liability would be limited to his personal gain or benefit, which would be a reduced net amount of his gross commissions and imputed personal income.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (L) (confirmation of plans).

## Eligibility under § 109(e)

The Sixth Circuit provides a starting point for determining eligibility under § 109(e) in Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751 (6th Cir. 1985). The Court held that "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." 773 F.2d at 757. "[T]he fact that some later resolution of the conflict might render more certain the precise nature of the debt itself . . . is relatively immaterial in determining the debtors' financial condition and chapter 13 eligibility on the date the petition was filed." Id. at 758.

3

11-31435-dof   Doc 111   Filed 11/14/11   Entered 11/14/11 14:44:09   Page 3 of 6

Judge Hughes in In re Faulhaber, 269 B.R. 348 (Bankr. W.D. Mich. 2001) described the analytical framework of the Pearson decision:

> Pearson clearly directs that a debtor's eligibility for Chapter 13 relief depends upon the amount of the debtor's liquidated and non-contingent debts as of the petition date and that the bankruptcy court should rely upon the debtor's good faith assessment of the amount of such debts as manifested in the bankruptcy schedules prepared by the debtor. However, Pearson does not mandate that the bankruptcy court's evaluation must be limited to only the schedules as originally filed. For example, if the debtor had mistakenly scheduled the amount of an unsecured judgment as $300,000 when in fact the amount of the judgment was only $30,000, the debtor should not be barred from amending the schedules to correct the mistake. . . .
>
> Pearson also prohibits the bankruptcy court from taking into consideration events which occurred subsequent to the petition date in evaluating the debtor's eligibility for Chapter 13 relief. For example, a debtor may schedule the amount of an unsecured and unliquidated claim against him for personal injuries as "unknown" because it was not readily ascertainable as of the bankruptcy petition date. It would be of no consequence to the debtor's chapter 13 eligibility if that claim were later reduced to a sum certain through, for example, the continuation of a state court proceeding after modification of the automatic stay.

269 B.R. at 352-53; see also In re Tomlinson, 116 B.R. 80, 81 (Bankr. E.D. Mich. 1990) (J. Spector) (finding that Pearson allows for amendments to correct a miscategorized debt); In re Rohl, 298 B.R. 95 (Bankr. E.D. Mich. 2003) (finding that "a debtor's post-petition efforts to gerrymander eligibility requirements by picking and choosing debts" should not be rewarded).

Liquidated or Unliquidated

The Pearson court discussed a split in authority as to whether a substantial dispute as to liability for or the amount of a debt renders it unliquidated. Pearson, 773 F.2d at 754-55. Unfortunately, the Sixth Circuit did not adopt one line of reasoning over the other. However, since the Pearson decision was rendered in 1985, a majority of courts have found "that a claim is liquidated if its value can be readily ascertained whether or not the debtor's underlying legal

4

liability on that claim is in dispute." In re Dow Corning Corp., 215 B.R. 346, 356-57 (Bankr. E.D. Mich. 1997) (J. Spector) (citations omitted); see also Faulhaber, 269 B.R. at 354-55 (noting that, "[a]lthough not determinative, the Sixth Circuit in Pearson did conclude that the generally accepted definition of a liquidated debt is a debt which is 'readily ascertainable'", and a "broad consensus" has developed "that the debtor's liability is irrelevant to the determination of whether a debt is liquidated or not") (citing Pearson, 773 F.2d at 754-55).

Analysis and Conclusion

This determination comes down to what Debtor knew at the time he filed his Chapter 13 bankruptcy on March 23, 2011. The pre- and post-hearing affidavits and briefs and overall surrounding circumstances lead this Court to conclude that Debtor knew full well what the amount of the Consent Judgment was at the bankruptcy filing, and his argument that this claim was unliquidated and not yet reduced to a final judgment, is rejected. Debtor's self-serving affidavit does not refute the SEC's claim or the Consent Judgment. Moreover, the subsequent affirmation of the Consent Judgment issued by the District Court in its Final Judgment on July 25, 2011, reinforces the conclusion that the SEC's claim was in an amount of at least $463,491.13 and known by Debtor at the time he filed this Chapter 13 bankruptcy. This amount places Debtor well outside of Chapter 13 eligibility under Section 109(e).

In addition, the receiver's report, on file for years with the District Court, placed the amount owed by the Debtor in excess of the Section 109(e) limit. From the affidavits of the parties, the discussions between the Debtor and the SEC after the receiver's report was focused on either how the Debtor could pay this amount, or whether a full or partial waiver was available. A close review of the record does not uncover any dispute that the Debtor owed

$463,491.13. Instead, the issue between the SEC and the Debtor was collectability of the amount. While Debtor may have believed and may continue to believe that the SEC may not enforce all or part of the Consent Judgment, such does not render the amount less than what it is–a liquidated, unsecured claim for $463,491.13.

As the Court determines that Debtor is ineligible to be a Chapter 13 debtor pursuant to Section 109(e), it will not address the SEC's assertion of bad faith. The Court will allow Debtor 14 days to convert or dismiss this case. Counsel for the SEC is directed to prepare and submit and order consistent with this opinion.

**Signed on November 14, 2011**

                                                 **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**